Mercure, Peters, Spain and Graffeo, JJ., concur. Ordered that the judgment is affirmed.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MONTRICE A. NORMAN, Appellant. [715 NYS2d 802] —Cardona, P. J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered April 19, 1999, convicting defendant following a nonjury trial of the crime of criminal sale of a controlled substance in the third degree.

Following an incident in which he allegedly sold cocaine to an undercover police officer, defendant was indicted on a single count of criminal sale of a controlled substance in the third degree. After trial, he was convicted of the charge and sentenced as a second felony offender to a term of 6 to 12 years in prison.

Defendant contends that his conviction must be reversed because he was acting solely in the capacity as agent of the undercover police officer at the time that he purchased the cocaine. We note that "[t]he agency defense is based on the proposition that defendant acted as a mere agent of the buyer which may negate the 'sale' element of the charge" (*People v Geraci*, 254 AD2d 522, 523). The availability of the defense "turns on whether, under all the circumstances, the defendant can be said to have acted solely on behalf of the buyer such as to be a mere extension or instrumentality of the buyer" (*People v Ortiz*, 76 NY2d 446, 449; *see, People v Magee*, 263 AD2d 763, 765).

In the case at hand, the undercover police officer testified that, in accordance with instructions from a detective, she called a pager number written on a piece of paper given to her by the detective. She stated that on two occasions when she called the number she spoke with defendant, identified as "Bo," who indicated that he was working out of the area and she should try him again. Thereafter, on October 30, 1998, she spoke with defendant and told him that she had $100 and wanted to party. He responded that he was in the area and

agreed to take care of her, instructing her to meet him at a telephone booth outside the post office. She stated that when defendant arrived, he accused her of being a cop and told her to stick her tongue in his mouth to prove that she was not, whereupon she began to walk away. She related that defendant stopped her and told her he would hook her up. They got into her car and defendant directed her where to go, indicating that he may have to stop at various "spots" to make the purchase. The undercover officer testified that, while in the car, defendant again accused her of being a cop and asked her to touch his genitals to prove that she was not. She further stated that he started rapping about how the police would never catch him and told her that he was an FBI informant. She responded by telling him to get out of the car because she did not want to deal with someone involved with the police. According to the undercover officer, defendant indicated that that was the last test and told her where to park. Defendant exited the vehicle and, upon his return, instructed her to return to the post office where he put his hand in his mouth and removed five small crack packets. The undercover officer stated that defendant put the packets into her hand and she gave him $100. Before defendant exited the vehicle, she asked him if she could call him later to get more, and he responded that she could but not to wait long because he only had three left. Shortly after defendant exited the vehicle, he was arrested.

In our view, the foregoing testimony sufficiently demonstrated that defendant was acting of his own accord in purchasing the cocaine for distribution as a seller and was not a mere agent of the undercover police officer. Defendant's actions in encouraging the undercover officer to repeatedly contact him on his pager, referencing various "spots" where he could make the purchase, imposing certain "tests" upon her to ascertain her identity, using his own money to make the purchase and representing to her that she could obtain more packets from him later are illustrative of " '[s]alesman-like behavior' " establishing that he had "a personal interest in promoting the transaction" (*People v Jackson*, 155 AD2d 479, 479-480, quoting *People v Roche*, 45 NY2d 78, 85, *cert denied* 439 US 958; *see, People v Sheppard*, 273 AD2d 498, 499). Therefore, we decline to disturb the judgment of conviction.

Peters, Carpinello, Graffeo and Rose, JJ., concur. Ordered that the judgment is affirmed.